MILLER v. JOHN WANAMAKER, NEW YORK.

(Supreme Court, Appellate Term.   June 30, 1908.)

1. MASTER AND SERVANT—TORTS OF SERVANT—LIABILITY OF MASTER—WILLFUL
   AND MALICIOUS ACTS OF SERVANT.
   If a servant goes outside of his employment, and, acting maliciously
   or in order to effect some purpose of his own, wantonly commits a trespass
   or causes damage to another, the master is not responsible.
   [Ed. Note.—For cases in point, see Cent. Dig. vol. 34, Master and Serv-
   ant, §§ 1230–1232.]

2. SAME.
   Plaintiff had delivered goods at defendant's place of business.  While
   his wagon was being unloaded by his helper, or just after it had been un-
   loaded and plaintiff was about to drive out of the yard, a driver, as-
   sumably in the general employ of defendant, who had become angered
   because plaintiff would not allow him to unload first, stepped forward
   and kicked plaintiff's horse, causing it to jump and start to run.  Plain-
   tiff, in attempting to stop the horse, was kicked and injured by it.  Held,
   that the act of defendant's driver was a malicious and willful one, not
   done in furtherance of his master's business, and in no way connected
   with or incident to the performance of duties intrusted to him, and de-
   fendant was not responsible therefor.
   [Ed. Note.—For cases in point, see Cent. Dig. vol. 34, Master and Serv-
   ant, §§ 1230–1232.]

3. SAME—QUESTIONS FOR JURY.
   In an action against a master for the tort of a servant, the question
   as to whether the servant was acting within the scope of his employment
   is not a question for the jury, where the evidence discloses nothing from
   which an inference might legitimately be drawn that the servant was so
   acting.
   [Ed. Note.—For cases in point, see Cent. Dig. vol. 34, Master and Serv-
   ant, § 1275.]

Appeal from Municipal Court, Borough of Manhattan, Second Dis-
trict.

Action by Adolph Miller, an infant, by Philip Miller, his guardian
ad litem, against John Wanamaker, New York, for personal injuries.
From a judgment for plaintiff, defendant appeals.  Reversed, and new
trial ordered.

Argued before GILDERSLEEVE, P. J., and MacLEAN and SEA-
BURY, JJ.

Louis E. Shapiro (Abraham Oberstein, of counsel), for appellant.
Louis Lande, for respondent.

GILDERSLEEVE, P. J.   There is no substantial dispute over the
facts in this case.   The plaintiff, on November 11, 1907, was engaged
to deliver some baskets to the defendant.   He had them upon a small
express wagon, to which one horse was attached.   He drove to defend-
ant's place of business, and on arriving at the yard, where the goods
were to be delivered, was directed by a man in the employ of defend-
ant to back his wagon into a certain place, where the baskets were
to be unloaded.   The plaintiff was not in the employ of defendant.
As he was about to back into the yard, a driver of one of defendant's
wagons asked plaintiff to wait before backing in until such driver could

unload first. Plaintiff waited, and, after this driver had unloaded and gone, plaintiff then backed his wagon into the yard and took a position where he could unload. At this time another driver of one of defendant's trucks asked plaintiff to move out and permit him (the second driver) to drive in his place and unload before the plaintiff did. This plaintiff refused to allow. Just exactly what occurred after that is not made clear from the plaintiff's testimony, as he gives several versions of the happening, each varying somewhat from the other. Giving him the most favorable view, it seems that either while the plaintiff's wagon was being unloaded by his helper, or just after it had been unloaded and the plaintiff was about to drive out of the yard, this driver before alluded to stepped forward and kicked plaintiff's horse, causing him to suddenly jump and try to run, and in the attempt made by plaintiff to stop the animal he was kicked on the leg, receiving the injuries for which he sues.

A careful analysis of the testimony shows that the plaintiff had fully unloaded his wagon, and had left the entrance to the yard, or was on the point of leaving, when the driver kicked his horse. It was not shown that the person who had charge of the yard did anything, or knew that anything was being done, to the injury of the plaintiff. The person who kicked the horse was a driver of a truck having the defendant's name thereon and wearing a uniform with the letters "J. W." thereon. At most, then, we can only assume that the driver was in the general employ of the defendant, and the question to be determined is whether or not he was acting within the scope of his employment when he committed the act complained of. The test of liability in such cases depends upon the question whether the injury was committed by the authority of the master, expressly conferred or fairly inferable from the nature of the employment and the duties incident thereto. The mere statement of this rule answers the question in favor of the defendant in this case. The act of the driver was a willful and malicious act. It was not done in furtherance of his master's business, and was in no way connected with or incident to the performance of any of the duties intrusted to him as a driver, or which could be considered as promoting the defendant's interests. The rule is stated in Girvin v. N. Y. Central R. R. Co., 166 N. Y. 289, 59 N. E. 921, as follows:

"If a servant goes outside of his employment, and without regard to his service, acting maliciously or in order to effect some purpose of his own, wantonly commits a trespass, or causes damage to another, the master is not responsible."

Neither was it a question of fact, to be submitted to the jury in this case, as to whether or not the driver was acting within the scope of his employment, as that becomes only a question of fact when the evidence discloses something from which an inference might legitimately be drawn that the servant was so acting. Froomkin v. Brooklyn Eagle Co., 113 App. Div. 443, 99 N. Y. Supp. 300. No such fact appears in this case. The plaintiff failed to prove any liability on the part of the defendant, and the defendant's motions to dismiss, made at the close

of the plaintiff's case and renewed at the close of the whole case, should have been granted.

Judgment reversed, and new trial ordered, with costs to appellant to abide the event. All concur.